UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GLORIA LYNN STEWARD,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:21-cv-00714-EJY<br><br>**ORDER** |

Plaintiff Gloria Lynn Steward ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for disability insurance ("DIB") under Title II of the Social Security Act (the "Act"). ECF No. 21. On February 9, 2022, the Commissioner filed a Motion for Remand and Response to Plaintiff's Motion. ECF No. 22. In his Motion, the Commissioner represents that after consideration of the record and Plaintiff's Motion he communicated to Plaintiff that the Agency would stipulate to voluntarily remand the case for further administrative proceedings. *Id.* However, Plaintiff did not agree to a stipulated remand and moves the Court to reverse and remand her case for the calculation of benefits. ECF No. 21. For the reasons stated below, the Commissioner's decision is reversed and remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). Plaintiff's request for an immediate calculation of benefits is denied.

**I.    Background**

On March 15, 2018, Plaintiff filed an application for DIB alleging a disability onset date of December 20, 2016. Administrative Record ("AR") 15. The Commissioner denied Plaintiff's claims by initial determination on October 17, 2018 (AR 87-90), and upon reconsideration on April 17, 2019. AR 98-103. On August 12, 2020, Administrative Law Judge ("ALJ") David K. Gatto held a hearing at which Plaintiff testified and, *inter alia*, amended her alleged disability onset date to March 1, 2018. AR 15-26. The ALJ also heard the testimony of vocational expert ("VE") Skylar DePedro. AR 47. The ALJ issued his determination finding Plaintiff was not disabled on September

1, 2020. AR 12-26. When the Appeals Counsel denied Plaintiff's request for review on February 25, 2021, the ALJ's decision became the final order of the Commissioner. AR 1-5, 42 U.S.C. § 405(g). This civil action followed.

## II. Standard of Review

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). And, the court may not reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III. Establishing Disability Under the Act

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> 1. the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> 2. the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

2

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R.

§§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.  *See id*.

### IV.     Summary of ALJ Findings

At step one, the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2020, and had not engaged in substantial gainful activity from the amended alleged onset date of March 1, 2018.  AR 17.  At step two, the ALJ found that Plaintiff suffered from degenerative joint disease of the right acromioclavicular joint, tear of the right supraspinatus tendon; bilateral carpal tunnel syndrome; myalgia, and unspecified diffuse pain, all of which he found to be severe impairments.  *Id.*  The ALJ also determined Plaintiff suffered from a variety of non-severe mental impairments including transient amnesia, unspecified depressive disorder, and somatic symptom disorder.  AR 18.  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments meeting or medically equaling any "listed" impairment in 20 C.F.R. part 404, subpt. P, app. 1.  AR 20.

In preparation for step four, the ALJ determined Plaintiff had the Residual Functional Capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except she can occasionally reach overhead with both upper extremities. She can frequently reach to the front and laterally with both upper extremities.  She can occasionally climb stairs or ramps.  She can never climb ladders, ropes or scaffolds.  She can occasionally balance, stoop, kneel, and crouch.  She can never crawl.  She is capable of frequent handling and fingering with both upper extremities.

*Id.*[1]  In reaching the RFC determination, the ALJ considered opinions from state agency medical consultants Drs. Rule and Ribeiro that Plaintiff was capable of light exertion level work with some postural, manipulative, and environmental limitations.  AR 23.  The ALJ adopted the finding that Plaintiff was capable of light work with the exception that the ALJ declined to include push/pull limitations or environmental limitations because Plaintiff demonstrated no muscle weakness and a normal gait.  AR 23-24.  At step four, the ALJ found Plaintiff was able to perform past relevant work as a general clerk and shipping services sales representative.  AR 24.  After hearing testimony from

---

[1] "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

4

a VE, the ALJ also performed step five analysis in the alternative finding that there were other jobs that existed in significant numbers in the national economy Plaintiff perform given her age, education, work experience, and RFC. *Id.* For example, the ALJ found Plaintiff was capable of performing the jobs of Furniture Rental Consultant and Usher. AR 25. Ultimately the ALJ concluded Plaintiff was not disabled. *Id.*

**V.    Plaintiff's Relevant Medical History**

Plaintiff limits her challenge of the ALJ's medical assessment to Plaintiff's physical impairments. ECF No. 21 at 3-7. The Court therefore summarizes this portion of the record.

A.    <u>Right arm and shoulder impairment</u>.

Plaintiff alleges she has a history of orthopedic injury to her dominant right arm/right shoulder that has prevented her from moving her right arm and caused her consistent pain since the alleged onset date of March 1, 2018. AR 549. Plaintiff is right-handed. *Id.* Plaintiff alleges she cannot move either arm above chest-level. AR 21. Plaintiff sought care for her shoulder for persistent pain on March 23, 2017, and again on May 3, 2017. *Id.* An MRI of Plaintiff's right shoulder from August 22, 2017 revealed "an extended SLAP tear and partial thickness tear of the supraspinatus tendon, as well as a moderate amount of fluid in the subracromial/subdeltoid bursa." AR 466-467, 521-522. Plaintiff was examined by an orthopedic specialist on October 3, 2017 who confirmed Plaintiff's decreased range of motion in the shoulders. AR 334-347. Plaintiff received multiple rounds of injections. AR 22. On March 14, 2018, Nurse Practitioner Senialita Abarquez diagnosed Plaintiff with a superior labrum lesion of the right shoulder. AR 381-382. That day, Plaintiff also consulted Dr. Angelo Lambos who diagnosed Plaintiff with a right shoulder strain and trapezius muscle strain and recommended physical therapy. AR 770. Dr. Lambos opined that Plaintiff could not lift over five pounds with her right arm, never climb ladders or reach above her shoulders with her right side.

On March 19, 2018, Plaintiff was seen by a second orthopedic surgeon, Dr. Robert Patti. AR 779. Dr. Patti diagnosed Plaintiff with prominent (right) frozen shoulder and recommended injections and physical therapy but added that "later she will likely need to consider" surgery. *Id.* On April 16, 2018, Dr. Patti performed a second examination on Plaintiff that revealed "only 50%

flexion possible, one third abduction possible. Internal rotation was limited moderately. Strength was good. [Plaintiff] held her shoulder depressed on the side." AR 454. In addition, Dr. Patti noted the MRI from August of 2017 revealed "significant bursitis … so her tear may be worse than indicated." *Id.* Dr. Patti stated: "[I]t is possible that [Plaintiff's] cuff pathology is worse than is indicated on the testing due to the bursitis finding," and recommended Plaintiff begin treatment immediately. *Id.* On May 3, 2018, Dr. Patti opined that Plaintiff could do "no lifting" at the time of the examination. AR 781-782. Dr. Patti recommended Plaintiff undergo surgical manipulation under anesthesia, which Plaintiff declined, opting to instead manage her pain with a muscle relaxant, narcotic pain medication, non-surgical manipulation, and physical therapy.

      Plaintiff visited her primary care physician Dr. Steven Fales on July 16, 2018. AR 535. At the appointment, Dr. Fales diagnosed Plaintiff with degenerative joint disease of the right acromioclavicular joint and opined that Plaintiff "cannot work" due to her right arm and shoulder pain. AR 535-537. In a medical source statement from February 4, 2019, Dr. Fales repeated his opinion that Plaintiff's right arm and shoulder pain, and bilateral carpal tunnel syndrome prevented her from performing various work related activities. AR 553-559. Dr. Fales opined Plaintiff cannot ever lift 10 pounds in a work setting and that her injuries, in combination, restricted her simple grasping and fine manipulation capacities. AR 556-558. Dr. Fales also opined Plaintiff cannot stand or walk for more than two hours in an eight-hour workday. *Id*. Dr. Fales further opined that "in the event that [Plaintiff] attempted to work at a light or sedentary job," Plaintiff would need to take frequent breaks not typically accommodated on a regular work schedule and Plaintiff would have to miss work due to unpredictable pain. AR 558.

      Despite continuing physical therapy in 2019, Plaintiff reported worsening right arm and shoulder pain throughout 2019 and 2020 that limited her ability to carry out the responsibilities of daily life. AR 724-753, AR 835-839. According to June of 2020 progress notes from Dr. Akhondi-Asl Hossein, Plaintiff exhibited "very limited range of motion of shoulders and hips, decreased passive abduction of the shoulders, [and a] slow gait." AR 826.

      B.      <u>Left shoulder impairment</u>.

Plaintiff began reporting left arm and shoulder pain in December 2018. AR 654. A January 9, 2019 MRI of Plaintiff's left shoulder revealed a "partial width tear of the subscapularis tendon" and "mild to moderate supraspinatus and infraspinatus tendinosis" as well as "minimal AC joint degeneration" AR 670. At a primary care appointment in 2020, Plaintiff complained of left shoulder pain and exhibited an inability to lift her left arm. AR 653-655. Plaintiff ascribes the left shoulder pain to overcompensating for her dominant right arm and shoulder. ECF No. 21 at 6.

      C.      <u>Bilateral Carpal Tunnel Syndrome</u>.

On December 14, 2018, Plaintiff consulted with an orthopedic specialist, Dr. Kenny Hanna, who noted Plaintiff's right upper extremity paresthesias with radiation into the elbow and right hand weakness. AR 618. Dr. Hanna's notes state that "all provocative symptoms for carpal tunnel syndrome were positive on the right side." *Id.* Plaintiff demonstrated a limited range of motion in her right shoulder and was positive for Hawkins's test and Jobe's test, leading Dr. Hanna to diagnose Plaintiff with right upper extremity paresthesias. AR 619. Moderate right carpal tunnel syndrome and mild left carpal tunnel syndrome, along with mild cubital tunnel syndrome on the right side were all indicated. AR 616. Dr. Hanna recommended surgery to treat the carpal tunnel in Plaintiff's right hand, which Plaintiff declined. *Id.*

Plaintiff further reported diminished grip strength during a visit to Dr. Syed Ali on January 2, 2019. AR 754. Dr. Ali noted weak handgrip in both hands, with particular weakness in the right hand. AR 759. Reviewing the December 14, 2018 studies, Dr. Ali affirmed Dr. Hanna's finding that Plaintiff suffered from moderate carpal tunnel on the right side and mild carpal tunnel on the left side. AR 758. Plaintiff began using bilateral hand braces for her carpal tunnel syndrome on February 6, 2019. AR 620. However, Plaintiff continued to experience pain from her carpal tunnel syndrome and on both sides as of February 7, 2020. AR 843.

**VI.**    **Discussion**

Plaintiff contends this case should be remanded for a calculation of benefits because the ALJ failed to properly evaluate the opinion evidence in the record, improperly denied benefits based on Plaintiff's choice to forgo physician-recommended surgery, and erroneously evaluated Plaintiff's

7

credibility. Defendant maintains that "remand for further proceedings is necessary to consider certain opinion evidence," but that the Court should not award benefits directly because "the record is in conflict as to whether Plaintiff is in fact disabled." ECF No. 22 at 5. Defendant argues further proceedings are needed to determine Plaintiff's capacity.

  A. <u>The ALJ's Failure to Properly Evaluate Medical Evidence</u>.

Plaintiff argues that her medical vocational profile requires a finding of disability under Social Security regulations "if she cannot perform all the exertional requirements of a full range of light work." ECF No. 21 at 14. The regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying or objects weighing up to 10 pounds." *Id.*, quoting 20 C.F.R. § 404.1563(b). Case law further defines light work as requiring lifting 10 pounds frequently and 20 pounds occasionally.[2] *Janice v. Saul*, Case No. 5:19-cv-1457-KES, 2020 WL 2733669, at *1 (May 26, 2020). Plaintiff states that a finding of disability is required if she "cannot lift 20 pounds up to 1/3 of an 8-hour workday and 10 pounds up to 2/3 of an 8-hour workday." ECF No. 21 at 14.

With this in mind, Plaintiff contends the ALJ improperly evaluated the opinions of Dr. Patti and Dr. Fales, and "failed to evaluate the opinions of Dr. Lambos and Nurse Practitioner Abarquez entirely." *Id. citing* AR 381, 770, 773. Plaintiff represents that all four health care providers opined she could, at best, lift only five pounds with her dominant arm, and only on an infrequent basis. *Id.* citing AR 381, 553-59, 770, 773, 781-82. Plaintiff contends these opinions are consistent with "showing an extended SLAP tear and partial thickness tear of the supraspinatus tendon, as well as a moderate amount of fluid in the subacromial/subdeltoid bursa." *Id. citing* AR 466-67, 521-22, 794-95. Plaintiff further cites to her 2019 left shoulder MRI and the 2019 EMG/NCV studies confirming her bilateral carpal tunnel syndrome to support the proposition that her lifting limitations place her RFC below what is required to perform a full range of light work. *Id. citing* AR 616, 619, 756, 759.

Plaintiff argues that the ALJ did not address or mention Dr. Patti's assertion that Plaintiff can do "no lifting." *Id.* at 15. Plaintiff argues this opinion is consistent with and supported by the opinions of Dr. Lambos, Dr. Fales, and Nurse Practitioner Abarquez, each of whom opined Plaintiff

---

[2]  The Dictionary of Occupational Titles defines frequently as between "1/3 and 2/3 of the time" and occasionally as "up to 1/3 of the workday." *Turney v. Astrue*, Case No. CV-10-211-CI, 2011 WL 4829716, at *8 (E.D. Wash. Oct. 12, 2011).

8

cannot lift more than five pounds. *Id.*  Plaintiff further finds error with the ALJ's failure to mention Dr. Lambos or Nurse Practitioner Abarquez and their "medical source opinions limiting … [Plaintiff] to less than sedentary work." *Id.*  Plaintiff cites 20 C.F.R. § 404.1520c(a)-(b), requiring an ALJ to "articulate how [he] considered the medical opinions" and articulate "how persuasive [he] find[s] all of the medical opinions.

Plaintiff argues the ALJ's RFC finding that Plaintiff is able to perform a limited range of light work was primarily based on Plaintiff's conservative course of treatment and, specifically, Plaintiff's failure to undergo recommended surgeries.  ECF No. 21 at 15.  Plaintiff points to the ALJ's finding that "[Plaintiff] has not undergone surgery although recommended." *Id. citing* AR 22; *see also* AR 23 ("Although recommended, the claimant has not undergone a carpal tunnel release or right shoulder surgery.").  Plaintiff argues courts in the Ninth Circuit consistently hold that an ALJ cannot deny a claimant benefits because such claimant opts not to get a recommended or suggested, as opposed to prescribed, surgery.  ECF No. 21 at 15, *citing Aguirre v. Astrue*, Case No. ED CV 08-1176PLA, 2009 WL 3346741, at *5 (C.D. Cal. Oct. 14, 2009); *Mariah V.A. v. Saul*, Case No. C 20-121-M-DWM, 2021 WL 1660947, at *6 (D. Mont. Apr. 28, 2021).

Plaintiff cites to 20 C.F.R. § 404.1530(a)-(b), titled "Need to follow *prescribed* treatment," instructing that in order to be awarded benefits a claimant must "follow treatment *prescribed*" by the medical source "if the treatment is expected to restore [the] ability to work … [and failure to] follow *prescribed* treatment without a good reason" will result in a finding of not disabled.  ECF No. 21 at 16 (emphasis added).  Plaintiff argues that despite the comparatively conservative course of treatment she chose—"managing her pain with 'pain medications, physical therapy and periodic shoulder injections'"—"it is difficult to fathom what else the ALJ feels … [she] should be doing …." *Id.* at 17.

Defendant does not respond to Plaintiff's argument that the ALJ improperly used her choice to decline recommended surgery as a basis for denying benefits. ECF No. 22.  Defendant cites to *Burrell v. Colvin*, 775 F.3d 1133, 1137-40 (9th Cir. 2014) for the proposition that remand for the direct award of benefits is improper "even when no reason was provided for the credibility determination" where the record is in conflict as to disability.  *Id.*  Defendant stresses "an individual

9

is entitled to Social Security benefits if, and only if, the individual is, in fact, disabled." *Id.*, *citing Strauss v. Comm'r of Soc. Sec.*, 635 F.3d 1135, 1138 (9th Cir. 2011). Defendant agrees remand is proper to consider the opinion evidence of Dr. Lambos and Nurse Practitioner Abarquez, but nonetheless argues findings from state agency Drs. Rule and Ribeiro, showing improvement in Plaintiff's condition, as well as Plaintiff's "conservative treatment" as evidence that further fact finding is necessary to determine whether Plaintiff is disabled. ECF No. 22 at 8.

Defendant contends the ALJ appropriately found Drs. Fales and Patti's opinions regarding Plaintiff's inability to work unpersuasive. ECF No. 22 at 9. Defendant states that these opinions were contradicted by later examinations showing "no evidence of muscle weakness, normal gait, and no use of an assistive device." *Id.*, *citing* AR 22-23. Defendant points out that the ALJ also found Plaintiff's decision to opt for conservative treatment, including "injections, physical therapy splints, and medication," supports ALJ's finding. *Id.* Relying on *Jones v. Astrue*, 499 F. App'x 676, 677 (9th Cir. 2012) (unpublished), Defendant argues conservative treatment provides little support for a physician's conclusory statements of work disability. *Id.* Finally, Defendant argues the ALJ was justified in finding Dr. Fales' opinion was contradicted by the two earlier medical findings of state agency Drs. Rule and Ribeiro. *Id.*

Again, however, Defendant agrees the ALJ's failure to address Dr. Lambos' opinion that "Plaintiff may lift up to five pounds occasionally, not reach above her right shoulder, and could not climb ladders," warrants remand for further factfinding to determine whether the opinion demonstrates an inability to work without limitations, and "if so, whether those limitations preclude[] work in the national economy." ECF No. 22 at 8-9 *citing Brancaccio v. Saul*, 788 F. App'x. 561, 562 (9th Cir. 2019) (unpublished). Defendant states Dr. Lambos noted Plaintiff should follow up in two days and that she failed to do so. *Id.* at 9. Defendant contends Dr. Lambos' opinion from March 2018 does not mention the duration of the limitations contained therein. *Id.* According to Defendant, Plaintiff's failure to follow up with treatment and the lack of detail as to how long Plaintiff is precluded from lifting more than five pounds constitute ambiguity in the record meriting further factfinding to assess the contours of Plaintiff's work limitations. *Id.*

With respect to Nurse Practitioner Abarquez's notes stating Plaintiff "can't even do light duty," Defendant argues the placement of this statement in "symptoms" rather than in "assessment" shows the note is not "a medical opinion … but merely a recitation of Plaintiff's subjective complaints." *Id.* at 8. Defendant says that under 2 C.F.R. § 404.1514(a)(2) the ALJ had no obligation to "articulate these statements" because they are not medical opinions. In conclusion, Defendant contends that the evidence does not support a finding of disability and an award of benefits. Instead, this case should be remanded to the Social Security Administration for further proceedings.

B.   The ALJ's credibility determination.

An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations omitted). Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if he gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citation and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the plaintiff's] testimony.")). Further, "[w]hile an ALJ may find testimony not credible in part or in whole, he may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The Ninth Circuit recognizes the clear and convincing evidence standard as "the most demanding required in Social Security cases" and "not an easy requirement to meet." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Trevizo v. Berryhill*, 871 F.3d 664 678 (9th Cir. 2017). An ALJ's failure to provide "specific, clear, and convincing reasons" for rejecting a plaintiff's pain and symptom testimony constitutes legal error that is not harmless because it precludes a court from conducting a meaningful review of the ALJ's reasoning and ensuring that the plaintiff's testimony is not rejected arbitrarily. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

In making an adverse credibility determination, the ALJ may consider, among other factors, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Plaintiff challenges the ALJ's finding that her statements and activities as articulated in the record were inconsistent with the intensity, persistence, and limiting effects of her symptoms. AR 21. Plaintiff contends the ALJ erroneously rejected her subjective symptom testimony as not credible. ECF No. 21 at 18. Plaintiff summarizes her subjective testimony as follows: "she can only lift up to 5 pounds with her dominant right arm, … has weakness in her left arm, … needs assistance form family members getting her right arm in and out of clothes as well as shaving under her arms, … and cannot comb her hair." *Id* at 18-19. Plaintiff argues the ALJ provided "little in the way of non-medical evidence to rebut … [her] testimony about the severity of her symptoms." *Id.* at 18. Again, Plaintiff points out that the ALJ's reasoning depends on discounting Plaintiff's decision to forego "recommended" surgery, which Plaintiff notes was cited five times in the record, AR 22-23, and which Plaintiff maintains is an "invalid reason[]" to discount her "well-supported allegations in this Circuit." *Id.* at 19.

Defendant responds that despite Plaintiff's subjective complaints of pain, lifting limitations, and limited range of motion, examinations taken close in time to the alleged onset date reveal "reduced range of motion in her right shoulder, but almost intact strength and passive internal and

external rotation of her shoulder (AR 393)." ECF No. 22 at 11.  Defendant explains that the ALJ dismissed Plaintiff's complaints because she "did not require or undergo surgery, despite such options existing; rather, she received treatment consisting of medication, injections, and physical therapy (AR 22)."  *Id.*  Defendant also reiterates that later examinations revealed "normal gait and station, some decreased range of motion in her left and right shoulders, but no weakness or joint deformities, or neurological abnormality (AR 626, 840)."  *Id.*  Defendant argues the reviewing opinions of the state agency doctors do not support a finding of disability.  *Id.* at 12.

Defendant further contends remand for additional fact-finding, rather than for the calculation of benefits, is appropriate "where [the] ALJ improperly evaluated credibility but 'significant factual conflict' existed between the claimant's allegations and a doctor's opinion, activities of daily living, and relief from treatment."  *Id.*, *citing Brown-Hunter*, 806 F.3d at 495-96.  Defendant requests the Court remand for further fact finding and require an ALJ render a new decision pending *de novo* review of "the medical opinion evidence[, …] the prior administrative medical findings," and any additional steps to develop the record.  ECF No. 22 at 12.

      C.    <u>Analysis</u>.

Whether to remand an appeal from denial of Social Security benefits is a decision left to the discretion of the Court; nonetheless, an award of benefits is appropriate only in rare and exceptional cases.  *Dillon v. Saul*, Case No. 3:20-cv-00294-CLB, 2021 WL 1124300, at *5 (D. Nev. Mar. 24, 2021).  "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded for further proceedings."  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (citation and quotation marks omitted).  "An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017) (citation omitted).  That is, "[w]hen the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits."  *Id.* at 1045 (citation omitted).  Said slightly differently, "[w]here ... an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."  *Reveles v. Berryhill*, Case No. 2:19-cv-00100-VCF, 2020 WL 636917, at *3 (D. Nev. Feb. 11, 2020).

Here, Defendant agrees that the ALJ failed to provide legally sufficient reasons for rejecting portions of Dr. Patti and Dr. Fales' opinions and ignored the opinions of Dr. Lambos and Nurse Practitioner Abarquez. ECF No. 22 at 5, 8. Further, the Court finds the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's symptom testimony. The ALJ's repeated reliance on Plaintiff's choice to forgo a surgery she was not required to undertake does not meet the demanding clear and convincing standard the ALJ must meet in order to reject Plaintiff's symptom testimony. *Aguirre*, 2009 WL 3346741, at *5; *Mariah V.A.*, 2021 WL 1660947, at *6. *See also Garcia v. Saul*, 509 F. Supp. 3d 1306, 1323 (D.N.M. 2020) (remanding for further factfinding where the ALJ did not "expressly consider whether Plaintiff's failure to obtain the recommended surgery may have been justifiably excused").

Turning to the credit-as-true analysis, this permits, but does not require, an award of benefits when the ALJ fails to provide sufficient reasoning for rejecting testimony and there are no outstanding issues on which further proceedings in the administrative court would be useful. Then, and only under these circumstances, if a claimant's testimony is credited as true an award of benefits may be appropriate. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101–02 (9th Cir. 2014). In articulating the "credit-as-true" framework, the Ninth Circuit was clear that any legal error by an ALJ warrants further record development rather than the direct award of benefits unless Plaintiff can show "the record as a whole is free from conflicts, ambiguities, or gaps" and "all factual issues have been resolved." *Id*. at 1103-04; *Burrell*, 775 F.3d at 1137-40.

The credit-as-true test requires (1) the record to be fully developed such that further administrative proceedings would serve no purpose, (2) the failure of the ALJ to articulate legally sufficient reasons for rejecting medical opinion evidence or claimant's testimony, and (3) if, on remand, the rejected evidence were credited as true, the ALJ would be required to find the claimant disabled. *Garrison*, 759 F.3d at 1020. Here, the elements of the credit-as-true test are not met. As indicated above, there remains an unresolved conflict created by the opinion evidence received from Plaintiff's four treating sources (Drs. Patti, Fales, and Lambos, and Nurse Practitioner Abarquez), the opinions of two state agency medical consultants, and subsequent medical examinations from 2020. In 2019, Dr. Fales opined that Plaintiff could not perform even sedentary work for at least

twelve months because of her inability to (1) lift ten pounds, stand or walk for more than two hours in an eight hour day, (2) grasp, push, pull, or perform fine manipulation, or (3) work in an office setting based on her postural and environmental limitations. AR 556-558. *See also* AR 770, 773 (2018 opinion of Dr. Angelo Lambos, diagnosing Plaintiff with a muscle strain, recommending physical therapy, and limiting Plaintiff to lifting below five pounds); AR 781-782 (2018 opinion of Dr. Patti, finding Plaintiff cannot do any lifting due to limited flexion and abduction/joint deficiencies and thus cannot perform even sedentary work); and AR 381 (2018 opinion of Nurse Practitioner Abarquez finding Plaintiff "cannot even do light duty" due to torn ligaments/joint deficiencies). In contrast, 2018 opinions received from state agency examiners found Plaintiff could perform a light range of work. AR 23. Then, in 2020, medical examinations done by Drs. Dixit, Wang, and Lee, as well as Dr. Fales, all indicated Plaintiff's condition improved with injections, medication, and physical therapy. AR 716, 718, 728, 836, 840. The 2020 examinations did reveal decreased motion in Plaintiff's right and left shoulders, but no muscle weakness, joint deficiencies, or neurological abnormality, in addition to normal gait, intact strength, and sensation of Plaintiff's upper and lower extremities and improvement over time. *Id.*

In sum, medical opinions identifying Plaintiff as disabled at the sedentary level, the least demanding category of work the regulations establish, conflict with the opinions of Drs. Ribeiro and Rule finding Plaintiff can perform light work. *Tackett*, 180 F.3d, at 1103. In addition, the opinions of Drs. Patti, Fales, and Lambos, and Nurse Practitioner Abarquez may be said to conflict with medical evidence from 2020 finding improvements in Plaintiff's condition. For these reasons, Plaintiff cannot establish the absence of "conflicts, ambiguities, or gaps" in the record sufficient to satisfy the first prong of the credit-as-true test. *Treichler*, 775 F.3d at 1103-04. Because further fact-finding is necessary to resolve these ambiguities, remand for further proceedings is appropriate.

**VII.  Order**

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 21) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendant's Motion for Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g) (ECF No. 22) is GRANTED.

IT IS FURTHER ORDERED that this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

Dated this 12th day of July, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE